UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| AMBER L. DEVRIES, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:15CV188-PPS |
| | ) | |
| CAROLYN COLVIN, Acting Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Amber Devries appeals the final decision of the Commissioner of Social Security denying her application for Child's Insurance benefits and Supplemental Security Income benefits. [DE 1.] That decision is embodied in the written opinion of an Administrative Law Judge issued after an evidentiary hearing. Judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Overman*, 546 F.3d at 462.

The ALJ found that Devries had four severe impairments: a depressive disorder, a generalized anxiety disorder, attention deficit disorder and obesity. [DE 10 at 23.][1] A non-severe impairment of hypothyroidism was found to be controlled with medication. [*Id*. at 24.] The ALJ rejected Devries' claims of several "non-medically determinable" impairments – osteoarthritis, ankle and knee disorders, mild mental retardation and a menstrual cycle disorder – finding no supporting diagnoses or treatment in the medical record, with a careful discussion of the medical evidence *not* supportive of each claim. [*Id*. at 24-25.]

At the next step of the familiar sequential evaluation process, the ALJ determined that Devries' impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id*. at 25.] In making this determination, the ALJ discussed the opinions of various reviewing consultants, Devries' daily activities, her school records, and the records of her treating doctors. [*Id*. at 25-28.]

Ultimately, the ALJ concluded that, despite her impairments, Devries retained the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, to stand or walk for up to 2 hours in an 8-hour workday, to sit for up to 6 hours in an 8-hour workday, to occasionally stoop, kneel, crouch or crawl but never to climb ladders,

---

[1] The administrative record is found in the court record at docket entry 10, and consists of 435 pages. I will cite to its pages according to the court's Electronic Case Filing page number, rather than by the Social Security Administration's Bates stamp numbers, which don't begin until page 5 of 435 as the pages are enumerated in ECF.

ropes, or scaffolds. [*Id*. at 28.] These findings supported the ultimate determination that Devries is not disabled because she remains capable of performing light work comprised of simple routine and repetitive tasks, with only occasional interaction with supervisors, coworkers or the general public, and with some exertional limitations. [*Id*. at 28.] Based on the vocational expert's testimony, the ALJ concluded that Devries is capable of performing jobs that exist in significant numbers in the national economy, such as various assembly positions. [*Id*. at 34.]

Devries was 24 years old at the time of her hearing. [DE 10 at 46.] She lived with her grandparents, and had done so since she was a one year old. [*Id*.] After four years of high school, Devries finished only the 10th Grade. [*Id*.] Devries testified that she spends most of her day on the computer, reading, or sleeping. [*Id*. at 49.] She helps with the laundry but is forgetful about it. [*Id*. at 48.] She tries to go to the gym with her grandparents at least three times a week. [*Id*. at 50.] Devries testified that sitting or standing too long at one time causes her legs or back to hurt, and that walking for 30 minutes would cause her ankles to swell, although 10 minutes on the treadmill is helpful for her ankles. [*Id*. at 51-52.] At that time, Devries had lost more than 20 pounds (down to 282 from 304), thanks to working out at the gym, changing her eating habits and "trying to leave the house more." [*Id*. at 53-54.] She testified to the anxiety she experiences if she is out of the house around people other than her family members. [*Id*. at 55-56.] Devries testified to the goals she has set for herself, including getting a

driver's permit, which she has done. [*Id*. at 57.] She is setting goals toward independence from her grandparents, including losing weight, learning to drive, and getting out of the house to socialize more. [*Id*. at 57-58.] Her testimony demonstrated that she imagines being able to hold down a job in the future. [*Id*. at 60-61.]

Devries' first argues that the ALJ is not permitted to deny benefits by relying on unsigned reports. In particular, Devries points to the ALJ's reliance on the opinion of a state agency psychological consultant that Devries' impairments did not meet or equal regulatory listings conclusively demonstrating disability. [DE 13 at 15.] Exhibits 5F and 6F in the administrative record contain the Mental Residual Functional Capacity Assessment and Psychiatric Review Technique forms attributed to Ann Lovko, Ph.D. [DE 10 at 333-350.] The Psychiatric Review concludes that Devries' mental disorders do not meet or equal Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders) or 12.06 (Anxiety-Related Disorders). [*Id*. at 347-48.] The ALJ reviewed, relied on and adopted these findings, noting the lack of contrary evidence. [DE 10 at 25-26.] On each of the two forms, Lovko's name is typed in the blank for her signature. [*Id*. at 335, 337.] Devries also points to the "great weight" the ALJ afforded the opinion of the State agency medical consultant concerning Devries' residual functional capacity. [ DE 10 at 33, 358-365.] This Physical Residual Functional Capacity Assessment is Exhibit 8F in the administrative record. In the blank for the medical consultant's signature, the name "A. Dobson, M.D." is typed. [*Id*. at 365.]

4

Devries cites regulatory language providing signature requirements for medical consultative examiners. It is true that a consultative examination report must be signed by the provider under the relevant SSA regulations:

> All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results. The signature of the medical source on a report annotated "not proofed" or "dictated but not read" is not acceptable. A rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable.

20 C.F.R. §404.1519n(e). By its terms, this regulation applies the signature requirement to reports by *consultative examiners* – that is, medical professionals who actually examine the applicant. Dr. Lovko and Dr. Dobson did not perform any examination of Devries, but were consultants who rendered opinions based solely on their review of the record. So the regulatory requirement Devries cites does not apply.

Devries also relies on *Terry v. Astrue*, 580 F.3d 471, 476 (7th Cir. 2009), in which the Seventh Circuit cited 20 C.F.R. §404.1519o for the proposition that "an unsigned examination report may not be used to deny benefits." Again, that limitation applies to *examination* reports, which Dr. Lovko's and Dr. Dobson's reports were not. The Court of Appeals also noted about the unsigned report in *Terry* that there was "nothing in the record itself that suggests the report is authored by a physician at all, let alone the

specific doctor proposed by the government." *Id.* By contrast, the challenged exhibits here clearly identify the doctors to whom they are attributed by name.

The agency also points out that other administrative authority allows for electronic signatures, citing DI 26510.089 of the agency's Program Operations Manual System or POMS. This authority provides that, with an exception not pertinent here, "[e]ach medical assessment form must have a reviewing MC/PC's actual physical signature or an approved electronic signature." *Id*. at Section A.4. Relying on the POMS passage, the agency likens the typewritten names in the signature blanks to "approved electronic signature(s)." Devries distinguishes the appearance of Dr. Lovko's and Dr. Dobson's typewritten names from the electronic signature of examining physician Dr. Ralph Inabnit, D.O., on his Disability Determination report, Exhibit 7F. [DE 10 at 351-357.] That report concludes with a more elaborate electronic signature:

> Electronically signed by Ralph E. Inabnit, DO on Mon Nov 05, 2012 13:16:33
>
> _____
>
> Ralph Inabnit, DO
> DV_SBTM05/JESSICA
> R: 11/03/2012 01:21 PM
> T: 11/04/2012 08:19 AM
> Job: 1465231

[*Id.* at 357.]

Devries fails to cite any authority explaining what does and what does not constitute an electronic signature. This failure, plus Devries' reliance on the inapplicable regulation, mean she has not provided applicable authority about what

6

form of signatures is acceptable on reviewing consultant's reports. So she hasn't shown whether or not the simpler typewritten names of Drs. Lovko and Dobson – even if less detailed than Dr. Inabnit's electronic signature – constitute "approved electronic signatures."

What's more, Exhibits 5F, 6F and 8F are government OMB forms. My research has disclosed another provision in POMS that suggests such forms may (or must) be completed online and "signed" electronically:

> eForms, UniForms, and OMB approved forms incorporated in electronic tools, such as eCAT, are electronically signed using the "SIGN" button located in the signature field. The "SIGN" button produces an approved electronic signature, in an italicized font, of the user who is logged on to the workstation. Electronically signed eForms, UniForms, and forms incorporated into electronic tools, such as eCAT, do not require a handwritten signature.

DI 81020.105(C)(1). POMS appears to contemplate a form of approved electronic signature that may be what was used on the Lovko and Dobson forms.

District courts in this circuit (including this one) have affirmed ALJs' reliance on reports signed using electronic signatures. *See Taylor v. Comm'r of Soc. Sec.*, No. 3:12-CV-228-PPS, 2013 WL 5436929. at *5 (Sept. 26, 2013) (electronically-signed opinions of non-examining state agency physicians were properly relied upon). *See also Borth v. Comm'r of Soc. Sec.*, No. 08-cv-1352, 2010 WL 786007, at *6 (C.D. Ill. Mar. 4, 2010) (affirming the ALJ's opinion relying upon an electronically signed report in making his decision); *Guthrie v. Astrue*, No. 10-cv-03180, 2011 WL 3041365, at *22 (N.D. Ill. July 22, 2011) (noting that while electronic signatures were unacceptable prior to a POMS

7

amendment, electronic signatures were acceptable following June 8, 2009). I am not persuaded the reports of Drs. Dobson and Lovko must be wholesale discarded based on their typed signatures and could not properly have been considered by the ALJ.

Devries' next challenge is that, in several respects, the ALJ failed to follow applicable regulations in evaluating medical opinion evidence. [DE 13 at 18.] First, Devries contends that the ALJ did not give any indication of the weight he assigned to the opinions of several doctors: consultative examining psychologist Dr. Douglas Streich (Exhibit 4F), consultative examining physician Dr. Ralph Inabnit (Exhibit 7F), and a non-examining source, Dr. A. Dobson (Exhibit 8F). I note that Dobson is the doctor whose opinion Devries earlier complained the ALJ had erroneously given "great weight" although it was unsigned. So this new and contrary argument is without merit as to Dobson. But its presentation highlights one difficulty with the ALJ's opinion, namely that it often does not identify doctors by name, making it difficult to link the ALJ's discussion of a particular doctor's treatment or opinion with the record of it, particularly as the ALJ's decision also at times cites whole exhibits rather than specific pages of the administrative record.

Back to Devries' argument, Doctors Streich and Inabnit examined Devries and reported objective medical findings rather than "opinions" to which persuasive weight could be assigned. It is "medical opinions" that the ALJ must evaluate and consider the appropriate weight to be given. 20 C.F.R. §404.1527. "Medical opinions" are defined in the regulation as "statements from physicians and psychologists or other acceptable

8

medical sources that reflect judgments about the nature and severity of your impairment(s), including [about] your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." §404.1527(a)(2).

Some of Doctor Streich's and Doctor Inabnit's findings are briefly noted in the ALJ's decision, such as concerning Devries' hygiene and her IQ (Streich, DE 10 at 26, 33) and what Devries reported to the examining physician about her physical capabilities (Inabnit, DE 10 at 26). This information does not take the form of "medical opinion," in that it does not "reflect judgments about the nature and severity" of Devries' impairments or her abilities. The ALJ's opinion appropriately reflects that he was aware of the medical information and data contained in the reports of Doctors Streich and Inabnit, but the reports did not contain medical *opinions* requiring the ALJ's determination of the *persuasive weight* to be given in connection with his ultimate determination that Devries is not disabled.

Second, Devries repeats her earlier challenge to the ALJ giving "'great weight' to the unsigned report of a non-examining source." [DE 13 at 18.] In making this argument, Devries is citing the exact same portion of the ALJ's decision as she cited in her first argument about the opinion of Dr. Dobson [DE 10 at 33], but recasting the argument with a slightly different approach. Devries challenges the ALJ's characterization that the unnamed "State agency medical consultant opined that the claimant could complete light work," as the ALJ also ultimately determined. [DE 13 at

9

18, quoting DE 10 at 33.] Devries contends that the administrative record contains no such opinion by a medical consultant, and that the closest thing – Exhibit 8F, the Physical Residual Functional Capacity Assessment of A. Dobson, M.D. – cannot appropriately be given great weight for several reasons (in addition to the fact that it is unsigned).

These reasons are that Dr. Dobson did not consider all of the medical evidence, that the opinion is inconsistent with the opinion of DeVries' primary treating physician and that there was no medical source statement in the file concerning Devries' physical capabilities. [DE 13 at 18.] Because Devries fails to identify medical evidence that was overlooked by Dr. Dobson and fails to identify the "treating primary care physician" whose opinion Dobson disagreed with, Devries' weak and conclusory arguments are unpersuasive. The ALJ did in fact cite medical evidence he found consistent with Dobson's assessment, namely Devries' private treatment records, as well as Devries' admissions concerning her exertional abilities. [DE 10 at 33.] As to the lack of a medical source statement in the file, the Commissioner responds that Dobson's observation was correct at the time it was made, because Dr. Bartush, whom Devries characterizes as her treating physician (more on this later), did not render his opinion until a month after Dobson's assessment. [DE 20 at 10.]

Next Devries similarly challenges the ALJ's assignment of "great weight" to the assessment of a "State agency psychological consultant" that Devries could do "unskilled work with social limitations." [DE 13 at 19, quoting DE 10 at 29.] Devries

10

identifies the consultant as the "nonexamining psychologist" who gave an unsigned report, citing "Tr. p. 332." [DE 13 at 19.] Bates-stamp page 332 of the administrative record is a continuation sheet of the Mental Residual Functional Capacity Assessment attributed to Ann Lovko, Ph.D. On that page, Dr. Lovko's comments do not expressly contain an "assessment that the claimant could complete unskilled work with social limitations," as the pertinent portion of the ALJ's decision references. [DE 10 at 33.]

Rather than quoting Dr. Lovko, the ALJ appears to be applying Dr. Lovko's conclusions about Devries' capabilities:

> To the extent his/her physical condition permits, the evidence suggests that claimant can understand, remember, and carry-out unskilled tasks in a setting not requiring significant interpersonal interaction. The claimant can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with work.

[DE 10 at 336.] Devries' challenge to the ALJ's use of Lovko's report is entirely conclusory, simply that "the ALJ did not apply the 'more rigorous tests'" (applicable to the opinions of non-treating sources) to Lovko's assessment. [DE 13 at 19.] This general statement fails to explain precisely what Devries believes the ALJ impermissibly did, or failed to do, with respect to Lovko's opinions, and so is unpersuasive.

In any event, this argument and Devries' challenges generally to the ALJ's handling of Dobson's, Lovko's, Streich's and Inabnit's opinions are not addressed in Devries' reply, and so have been abandoned. *Volkman v. Ryker*, 736 F.3d 1084, 1088 (7th

Cir. 2013); *Keck Garrett & Associates, Inc. v. Nextel Communications, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008); *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 615 (7th Cir. 2006).

Devries next argues that the ALJ did not properly assess or weigh the opinion of her treating physician Dr. Joseph Bartush. [DE 13 at 19.] Dr. Bartush executed a Mental Impairment Questionnaire concerning Devries on December 14, 2012, Exhibit 9F in the administrative record. [DE 10 at 366-371.] The form has handwritten diagnoses of dysthymic disorder, depression, mild mental retardation, morbid obesity, hypo-thyroidism, attention deficit disorder with no hyperactivity, and anxiety. [*Id.* at 367.] Bartush opines that Devries is categorically unable to work. [*Id.* at 369.] For each mental ability or aptitude needed to do unskilled work, Bartush checks the box reflecting his opinion that Devries' capacity is "Poor or None," due to her ADD, mild mental retardation and social anxiety disorder. [*Id.* at 369-70.] Needless to say, he has done the same for all the listed abilities and aptitudes needed to do semiskilled or skilled work. [*Id.* at 370.]

> The ALJ explains his evaluation of Bartush's assessment this way:
>
> In this assessment, the physician indicated that the claimant had been under his care since 2010, yet a review of the Healthlinc records indicated that the claimant had not personally been examined by this physician prior to mid-2013 (Exhibits 2F, 11F). Moreover, at that time, Dr. Bartush saw the claimant for unrelated physical issues, which rendered the opinion in Exhibit 9F rather unpersuasive as it reflected an individual who was incapable of functioning at any level and inconsistent with the educational records. Thus little weight was afforded to the assessment.

[DE 10 at 31-32.] As for Devries' history of treatment with Dr. Bartush, she points out that the Questionnaire itself lists seven dates of contact in 2011 and 2012 prior to the completion of the Questionnaire. [DE 10 at 367.] But review of the record confirms the ALJ's conclusion -- Devries was seen by other HealthLinc doctors or nurse practitioners on those seven dates, not by Dr. Bartush. [DE 10 at 281-309; 416-424.] Without his own treatment of Devries, Dr. Bartush's assessment is like that of any other non-examiner who offers an opinion based on review of the patient's medical records.

On the date Bartush signed the Questionnaire, the record shows that Devries was seen by Chantel K. Hendrix, NP, whom Devries had also seen on previous visits. [DE 10 at 416, 281, 286. ] Hendrix's report on the office visit explains Devries' "Chief Complaint" as that she was "here for completion of mental impairment questionnaire." [*Id.* at 416.] Just below Bartush's signature on the Questionnaire is a scrawled signature of "Chantel K. Anderson FNP," which – in connection with the lack of prior treatment records with Bartush – raises some question about who actually completed the Questionnaire. [*Id.* at 371.][2]

The ALJ was also dismissive of Bartush's opinions about Devries' mental impairments because even when he did later see Devries as a patient it was for unrelated physical issues. Dr. Bartush saw Devries several times for treatment *after*

---

[2] Two minutes on Google produces a Facebook page for Chantel Kelly Hendrix Anderson and other search results for Chantel Anderson and Chantel Hendrix as a Nurse Practitioner in the Indiana towns of Kentland and Knox, suggesting that Hendrix and Anderson are one and the same NP.

completing the disability-related Questionnaire. On April 26, 2013, Devries saw Dr. Bartush for prescription refills. [*Id.* at 409-411.] On June 25, 2013, Devries came to discuss weight loss options, an ear infection and allergies. [*Id.* at 392-394.] I agree with the ALJ that this post-Questionnaire history doesn't suggest Dr. Bartush had a treatment relationship with Devries that would particularly inform a well-supported opinion about her mental capacities. The ALJ has sufficiently and reasonably explained the little weight he afforded Dr. Bartush's Questionnaire responses concerning Devries' mental capacities.

Devries' brief concludes with a hodge-podge of arguments, none of which establishes a basis for overturning the Commissioner's determination that she is not disabled. For example, she complains about the ALJ's references to "objective medical evidence" without explanation. [DE 13 at 23.] Ironically, Devries provides no citation to the ALJ's 15-page opinion to enable an analysis of the language she attacks. Devries complains that a "non-examining source" failed to consider the clinical findings of Dr. Bartush. [*Id.*] Because Devries does not identify the source by name or cite to the relevant portion of the ALJ's decision, the argument is a non-starter. I note, however, that per the discussion above, Dr. Bartush's opinions as expressed in the Mental Impairment Questionnaire have been largely found to be unworthy of much weight. This determination renders unsuccessful Devries' various remaining arguments in reliance on Dr. Bartush, and they don't warrant further discussion here.

Finally, to the extent that Devries contends the ALJ did not give adequate consideration to her obesity as an additional factor aggravating the impact of other impairments, I reject the argument. [DE 13 at 26.] The ALJ several times expressly indicated that he had considered such exacerbatory impact pursuant to governing Social Security authority, namely SSR 02-1p. [*Id.* at 25, 33.] An explicit example is his consideration of Devries' obesity in connection with her allegation of musculoskeletal impairments of osteoarthritis and disorders of the ankle and knee. [DE 10 at 24.] I am persuaded that the ALJ properly considered Devries' obesity in evaluating her claim of disability. I also note that neither in this court nor before the ALJ did Devries highlight any specific evidence or argument about how her obesity impacts her work-related capacities. Furthermore, greatly to Devries' credit, the hearing transcript reflects that she was then successfully losing weight – some 20 pounds at that point – by going to the gym several times a week, working on portion control and reducing binge eating. [DE 10 at 53-54.]

## Conclusion

Devries fails altogether to demonstrate that the ALJ's findings and conclusions about the severity of her impairments and her residual functional capacity are not supported by substantial evidence. Using the applicable deferential standard of review, I conclude that the ALJ's determinations were supported by relevant evidence such as a reasonable mind might accept as adequate to support his conclusions. *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014).

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Amber L. Devries' applications for Child's Insurance Benefits and Supplemental Security Income is AFFIRMED.

The Clerk shall enter judgment in favor of defendant and against plaintiff.

**SO ORDERED**.

ENTERED: August 18, 2016

                                        /s/ Philip P. Simon
                                      **PHILIP P. SIMON, CHIEF JUDGE**
                                      **UNITED STATES DISTRICT COURT**